PRISMO UNIVERSAL CORPORATION *v.*
CITY OF LITTLE ROCK

5-5626 472 S.W. 2d 96

Opinion delivered November 1, 1971

*Pope, Pratt, Shamburger, Buffalo & Ross,* for appellant.

*Joseph C. Kemp,* City Attorney; *Robert L. Lowery,* Asst. City Atty., for appellee.

CONLEY BYRD, Justice. This action was instituted by appellant Prismo Universal Corporation to recover $6,928.52 for paint delivered to the City of Little Rock and used on its streets. The City admitted the receipt and use of the paint but denied that the goods were received and used on an open account. By way of affirmative defense the City alleged that the goods were used pursuant to the authority, terms and conditions of a telegram and letter date June 24, 1966. The trial court, sitting as a jury, found the issues in favor of the City. For reversal appellant contends that the court erred in finding as a matter of fact that the City was unsuccessful in its defense of Chancery Action No. 132996 and in concluding as a matter of law that appellant waived its right to payment.

Chancery Action No. 132996 was by Pulaski Glass & Mirror Company and Cliff G. Kress against the City of Little Rock to void a resolution accepting appellant's bid of $12,740 for 2,000 gallons of white and yellow street marking paint on the ground that the specifications were arbitrary and limited the bidding to appellant by the following requirement:

"The successful bidder shall be required to submit satisfactory listing of at least five users of 5,000 gallons or more with a previous successful application for not less than three (3) years prior to submission of bid. . ."

The prayer of the complaint was as follows:

"WHEREFORE, plaintiffs pray that they be granted a declaratory judgment holding the resolution of the Little Rock Board of Directors which accepted the bid of Prismo Safety Corporation to be void; for a declaratory judgment holding that the provision of the specifications attached hereto requiring any successful bidder to list five users of 5,000 gallons or more with a previous successful application for not less than three years prior to submission of the bid to be illegal, against public policy, and void; for an injunction against the purchase of the

Prismo paint and from the issuance of funds of the City of Little Rock in payment for said paint; for a mandatory injunction requiring the City of Little Rock to accept the bid of Pulaski Glass & Mirror Company; for a temporary injunction against the purchase of the Prismo paint during the pendency of this cause; for costs and all other proper relief."

That complaint was filed on May 4, 1966, and on May 16, 1966, the City repealed or rescinded the resolution accepting appellant's bid but on the same date enacted ordinance No. 11741 waiving competitive bidding and authorizing the purchase from appellant of street marking compound not exceeding $13,122.20. The City's order No. 8407 was placed the next day. Following issuance of the order Pulaski Glass & Mirror Company amended its complaint to place in issue the validity of ordinance No. 11741. The prayer of the amended complaint is as follows:

"WHEREFORE, plaintiffs pray that they be granted a declaratory judgment holding Resolution 3575 and Ordinance 11741 to be void; for an injunction against the purchase of the Prismo paint and prohibiting the issuance of funds of the City of Little Rock in payment for said paint; for a mandatory injunction requiring the City of Little Rock to accept the low bid of Pulaski Glass & Mirror Company; for a temporary injunction against the purchase of the Prismo paint during the pendency of this cause; for costs and all other proper relief."

After some of the paint, pursuant to order 8407, had been shipped but before it was used, appellant's salesman John Pinkley, initiated a telephone call to Mr. D. A. Reese, Jr., appellant's vice president of sales and marketing. This call was placed from the office of Henry DeNoble, then in charge of traffic and community development for the City. Mr. Kemp, the City attorney, was introduced to Reese over the phone and as a result of the conversation with Kemp, appellant sent the following telegram and letter:

****

"MR ANCIL M DOUTHIT CITY MANAGER

CITY CITY OF LITTLE ROCK LITTLE ROCK ARKANSAS

REFERENCE CITY OF LITTLE ROCK ORDER 8407 DATED MAY 17 1966

ALL MATERIALS COVERED THEREUNDER HAVE BEEN SHIPPED AND PRISMO SAFETY CORPORATION WAIVES ANY RIGHT TO PAYMENT FOR THESE MATERIALS PENDING THE SUCCESSFUL DEFENSE OF LAW SUIT AGAINST THE CITY OF LITTLE ROCK BY PULASKI GLASS AND MIRROR COMPANY AND CLIFF KRESS. PRISMO SAFETY CORPORATION WAIVES RIGHT OF PAYMENT IF THE CITY OF LITTLE ROCK IS NOT SUCCESSFUL IN ITS DEFENSE OF THIS SUIT AND IN THE INTEREST OF PUBLIC SAFETY PRISMO SAFETY CORPORATION RECOGNIZES THAT THE MARKING PROGRAM CANNOT BE CURTAILED BECAUSE OF ANY DELAY IN APPLYING THE NECESSARY MARKINGS. THEREFORE PRISMO SAFETY CORPORATION ACCEPTS POSSIBLE LOSS OF REIMBURSEMENT FOR THESE MATERIALS SHOULD THE CITY OF LITTLE ROCK NOT BE SUCCESSFUL IN DEFENDING THIS SUIT. PRISMO SAFETY CORPORATION DOES AUTHORIZE THE CITY OF LITTLE ROCK TO USE AND APPLY THE MATERIALS SHIPPED AGAINST ORDER NO 8407

D. A. REESE JR VICE PRESIDENT"

"June 24, 1966

"Mr. Ancil M. Douthit
City Manager
City Hall
Little Rock, Arkansas

"Reference: Purchase Order 8407, dated May 17, 1966

"Dear Mr. Douthit:

"This letter is to confirm our telegram of Friday, June 24, 1966, wherein Prismo Safety Corporation authorizes the City of Little Rock to use the materials shipped by this corporation against Purchase Order 8407, with full knowledge that payment for these materials is dependent upon successful defense of the suit now pending against the City of Little Rock, instituted by Pulaski Glass and Mirror Company and Cliff Kress.

"In the interest of public safety and the continuation of the marking program of the streets of Little Rock, Arkansas, Prismo Safety Corporation recognizes that the marking program cannot be curtailed because of any delay in the application of the necessary markings due to any pending suits concerning the award to this corporation. Should the City of Little Rock not be successful in defense of this suit, then Prismo Safety Corporation recognizes that it could not be paid for these materials, and it would constitute a financial loss in the amount shown on the purchase order.

Very truly yours,

Prismo Safety Corporation

D. A. Reese, Jr.
Vice President"

August 31, 1966, the Chancellor in cause No. 132996 issued the following decree:

"After hearing all of the evidence and considering the arguments of counsel, it is ORDERED AND DECREED as follows:

"1. The Court finds that no exceptional situation existed on May 16, 1966, making it unfeasible to purchase fast setting reflective marking compounds by competitive bidding as required by § 19-716 ARK.

STAT. ANN. and § 2-44 LITTLE ROCK CODE. Ordinance No. 11741 of the City of Little Rock dated May 16, 1966, is invalid as being unduly restrictive of competition. The City of Little Rock is permanently enjoined from purchasing the 1,700 gallons of white and 300 gallons of yellow traffic marking compound from Prismo Safety Corporation pursuant to the terms of that Ordinance.

"2. The Court declines to issue a mandatory injunction requiring the City of Little Rock to purchase reflective marking compound from Pulaski Glass & Mirror Company."

Mr. Kemp testified about the telephone conversation as follows:

"A. The City had attempted to purchase the marking compound identified in this complaint by waiving competitive bidding as reflected by the Ordinance. This was attacked in the Court by an interested competitor of Prismo, who alleged his compound met the specifications needed by the City. This lawsuit was instituted immediately after the Ordinance was adopted awarding the contract. I am unable to say whether it was prior to the date of the shipment, the first part of the shipment by Prismo or not, but it was all within a matter of a very few days one way or the other. This was, it was related to me, very critical to the City not to be able to have marking compound because of their program to mark and designate lanes for the traffic throughout the City, and they were anxious to have the suit disposed of as quickly as possible and/or use some compound that they had received. I advised them that it was not possible for them to use it inasmuch as the suit was pending, that we should await the outcome of the Chancery Court hearing. In our discussions, it developed that we had telephone conversations with the Vice President of Prismo Safety Cor-

poration at their office wherever it is back east, wherever it was, with a man named Reese. I explained to him the situation that the City was confronted with and told him under no condition would the City be able to use the compound except if Prismo understood and agreed, in writing, to us that if the City was unsuccessful in the litigation that was pending in Chancery Court questioning the propriety and legality of the purchase, then the City would not be expected, under any conditions, to pay for whatever, if any, of the marking compound they used. This conversation was understood by Mr. Reese and it was confirmed in writing to the City Manager, Mr. Ancil M. Douthit, at that time. It was confirmed first by telegram and subsequently the following day, as I recall it, by a letter, both over the signature of Mr. Reese."

On re-direct Kemp stated that in the phone conversation Reese told him that appellant's compound was whatever instrument Reese was willing to give and that the telegram and letter reflect the language he asked for.

On re-direct Kemp stated that in the phone conversation Reese told him that appellant's compound was so peculiar that it would meet the qualification stated in the ordinance but after promising to furnish such evidence later declined because appellant did not wish to reveal its secret formula to the public.

Mr. Reese acknowledged that appellant had been doing business with the city for 25 years, that he received the phone call, that the city and Mr. DeNoble were anxious to get on with the street marking program and that he was filled in as to the details of the Pulaski Glass & Mirror Company suit. Reese stated that in the phone conversation Kemp led him to believe that the Pulaski Glass & Mirror suit was a nuisance, a bothersome thing, but would not seriously impede the street marking program. Kemp suggested that it would help in the defense of the suit if Reese would send a

telegram and indicate that appellant would waive reimbursement for the materials. Reese considered this a rather unusual request. From the conversation Reese got the impression that there was not going to be any difficulty and the telegram and the confirming letter would be used to show good faith on the part of appellant with the City but that appellant would be paid for the materials. He also stated that Kemp assured him that if the suit were lost Kemp would see that there was some way that the material would be paid for. Reese emphasized that it was not suggested to him that he was in any way donating materials to the city but that the impression he got was that he would be paid regardless of what happened.

John Pinkley corroborated Reese's testimony that the main purpose of the telegram was use at the trial of the Pulaski Glass & Mirror suit to show appellant's good faith. It was his understanding that appellant would be paid if the City had to issue purchase orders for less than $1,000 which it could do without taking bids.

The trial court entered special findings. The one of which appellant complains is that, "The City of Little Rock was unsuccessful in its defense of Chancery Court Case No. 132996 and [appellant] waived its right to payment under the circumstances." As we view the record the trial court's finding is supported by substantial evidence.

A waiver is an intentional abandonment or relinquishment of a known right. As we understand the record there is testimony by Kemp that he, as the City's legal advisor, was of the opinion that appellant could not be paid for the material if the ordinance was voided and that this was explained to Reese. Furthermore, Reese was to furnish Kemp with proof that appellant's compound was so peculiar that it would meet the qualification stated in the ordinance. As a result of the one phone conversation with Kemp, appellant forwarded the telegram and the letter before any of the material was used. Neither appellant's witnesses nor its

counsel have suggested how the telegram or the letter would assist in the Pulaski Glass & Mirror suit. If the trial court should believe Kemp, as it had a right to do, it follows that appellant waived its right to receive payment.

Appellant also makes the argument that since the City was not enjoined in the Chancery decree, *supra,* from making payment for materials already used, the City was not unsuccessful in defending the Pulaski Glass & Mirror suit. This is premised upon the theory that appellant never agreed not to pursue a quantum valebant theory unless the court enjoined the City from issuing funds to pay for paint used. This approach overlooks the fact that the waiver was made before the paint was used and that according to Kemp the paint would not have been used without the waiver set forth in the telegram and the letter. Furthermore, as we understand the record the City was not successful in its defense of the Pulaski Glass & Mirror Suit.

Affirmed.